UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIENS SANTRAIL GRIFFIN,<br><br>Petitioner,<br><br>v.<br><br>M.E. SPEARMAN,<br><br>Respondent. | No. 2:18-cv-0562-MCE-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 14, 2016 and in the Sacramento County Superior Court, petitioner was convicted of first degree residential burglary and inflicting corporal injury resulting in a traumatic condition on a person with whom he has, or previously had, a dating relationship. He now raises the following claims: (1) he is actually innocent; (2) insufficient evidence supports his conviction; and (3) he was denied right to counsel and compulsory process when his trial attorney failed to subpoena two witnesses. Out of an abundance of caution, the court will also consider two claims raised in a state habeas petition attached to the current petition – (4) that the prosecutor used perjured testimony to convict him and (5) that new evidence supports his innocence.[1]

---

[1] The state habeas petition raises a total of seven claims. The majority of these claims

1

BACKGROUND

Petitioner began dating T'Keyah Greer in May of 2013. Approximately two years later, in April of 2015, the two moved into an apartment on Boxwood Street in North Sacramento. Petitioner's relationship with Greer ended in June of 2015 after she discovered he had been unfaithful. Greer told petitioner to move out of the Boxwood apartment at about that time.

On June 7, 2015 – after the break up and Greer's expulsion of petitioner from the apartment – Greer called 911 and claimed that petitioner was trying to break down the apartment door. She also stated that petitioner had been texting her threats. Petitioner was gone by the time police arrived. Greer dialed 911 again on July 19, 2015. She reported that petitioner had made harassing calls to her and indicated that he was currently headed to the Boxwood apartment to "put hands on [her]." The dispatcher gave Greer information on how to obtain a restraining order, but told her they would not send officers to the apartment until petitioner was actually there and Greer called back indicating a need for their presence. Greer did not call 911 again on July 19.

But Greer placed another 911 call on July 21, 2015. She told the dispatcher that petitioner had broken down the apartment door and was present with her. The initial call was lost and, several minutes later, Greer and the dispatcher reconnected. She stated that petitioner had "busted in" but had since left. The dispatcher asked Greer whether petitioner had assaulted her and she stated "[h]e just started hitting me (crying) (unintelligible) and that he'll kill me." Police arrived at the apartment and found the door "busted open." At trial, one of the responding officers testified that Greer was "upset, crying, and kept grabbing her face." He testified that Greer had visible swelling on the left side of her face and she reported that she had been punched. Under questioning from the officers, Greer refused to verbally state that petitioner was responsible for her injuries. Greer told officers that she would be hurt or killed if she told them who was responsible – either by the individual who was responsible or his family. An officer

---

overlap with the ones explicitly raised in the federal petition, however, insofar as they argue that insufficient evidence supports the conviction, that petitioner is actually innocent, and that his attorney failed to subpoena witnesses that would have bolstered his case. ECF No. 1 at 10-14. Thus, only the perjured testimony and new evidence claims need be addressed.

testified that she did, however, nod in assent when asked whether petitioner was responsible and thereby indicate his culpability. Greer's fifteen-year-old sister – M.L. – who was also present in the apartment, gave a statement to police in which she indicated that a black male had forcibly entered the apartment and struck Greer twice in the face with an open hand.

At trial, Greer recanted the statements she made to the responding officers and stated that petitioner did not threaten to kill her, break her apartment door, or strike her on July 21, 2015. M.L. also denied having given her earlier statement to police and claimed to not know what happened that night because she was sleeping.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I. Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). State court rejection of a federal claim will be presumed to have been on the merits

3

absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

### A. "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

### B. "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia

Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[2] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[3] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[4] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[4] *Faretta v. California*, 422 U.S. 806 (1975).

5

announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 182.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 562 U.S. at 101-102.

C. "Unreasonable Determination Of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to

consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; *accord Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II.    The Relationship Of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap.

/////

7

Accordingly, "[a] holding on habeas review that a state court error meets the ' 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

Each of petitioner's claims fails for the reasons stated hereafter.

### I. Actual Innocence and New Evidence (Claims One and Five)

Petitioner argues that his burglary conviction cannot stand insofar as his name was on the lease and utility bill of the victim's apartment. He also claims that he is actually innocent and, as evidence of this contention, points to: (1) the aforementioned lease agreement; (2) a letter from his landlord establishing his residency; and (3) a notarized post-trial recantation from the victim.

#### A. Last Reasoned Decision

The last reasoned decision belongs to the Sacramento County Superior Court which rejected these claims as follows:

/////

8

Petitioner claims he is actually innocent of the Penal Code § 459 first degree burglary conviction he suffered in Case No. 15F04437, because he was still living in the apartment that was the residence that was entered. He claims that he now has a letter from his landlord establishing his innocence, and that he also has a notarized letter from the victim stating that she intentionally lied and they had been living together at the time of the incident. He also claims ineffective assistance of trial counsel in failing to obtain these.

In its opinion affirming the judgment on appeal, the Third District Court of Appeal summarized the evidence admitted at trial as including evidence that the victim had kicked petitioner out of their apartment in June 2015, when she ended their relationship. The victim also had made previous calls to 911 claiming that petitioner was threatening her, trying to kick her door down, and texting her crazy messages. The victim explained that she had called 911 because she knew that petitioner was upset and on his way over to pick up his belongings and she was afraid of him. On July 21, 2015, the day of the incident itself, she called 911 and stated that petitioner had broken into her apartment by busting through the front door, threatened to kill her, and hit her. Police arrived at the apartment, saw that the front door had been busted open, and saw the victim's swollen and red face. The victim told the police at the scene that petitioner had broken into her apartment and punched her in the head at least three times, and the victim's teenage sister told police that a black male had forced his way into the apartment and had hit the victim in the face twice with an open hand. At trial, both the victim and victim's sister backtracked and changed their stories, but the jury disbelieved their trial testimony and convicted petitioner.

After summarizing the evidence presented at trial, the Third District rejected petitioner's claim on appeal that the trial court erred in not instructing the jury that petitioner could not be convicted of burglarizing his own apartment. The Third District found that the evidence at trial showed that although petitioner's name was on thee (sic) lease to the apartment, petitioner had moved out of the apartment in June 2015, before the incident at bar, and had thereby abandoned his unconditionally possessory right to enter or inhabit the apartment despite his name being on the lease. The Third District also found that the record showed that petitioner was not allowed to enter the premises without the victim's permission, and that the victim was the only person with a possessory interest in the apartment at the time of the burglary.

Petitioner's exhibits, the letters from his landlord and the victim, do not constitute "new evidence" as defined in Penal Code § 1473(b)(3), so as to entitle him to relief on the claim of actual innocence of the burglary. "New evidence," under the statute, must be credible, material, and of such decisive force and value that it would have more likely than not changed the outcome at trial; it must not be merely cumulative, corroborative, collateral, or impeaching. The letters do not meet these requirements.

The letter from petitioner's landlord, dated January 1, 2017, is not signed under penalty of perjury. Nor does it state that the landlord

9

> had personal knowledge that petitioner was still actually living in the apartment on the day of the incident. Rather, the landlord, in the letter, states only that petitioner was a "resident of ours" starting on October 1, 2014, that "they moved" to a different property of the landlord's on May 1, 2015, that "they stayed" there until December 8, 2015, when "Tkeyah," the victim, moved to another property of the landlord's. This does not establish that the landlord had actually ever set foot on the premises. It is of no material value, and would only be impeaching of the victim's prior statements.
>
> The letter from the victim, dated February 11, 2017, also is not signed under penalty of perjury. The letter appears to be another effort by the victim to backtrack from her statements made before trial, which the victim had been doing since the preliminary hearing in an obvious attempt to recant and allow petitioner to go free, despite the physical evidence found by the police at the scene immediately after the victim had called 911. The police found the front door busted in, and the victim's face to be swollen and red, establishing by circumstantial evidence that the apartment had been broken into and that she had been hit in the face. As the victim recanted about petitioner's guilt at trial, it is obvious that she is now also attempting to recant about petitioner no longer living at the apartment at the time of the incident. The recantation is as unbelievable as the victim's recantation of petitioner's actions on July 21, 2015, which the jury rejected at trial. The letter, therefore, lacks credibility, and at any rate would only be impeaching.
>
> It is not more likely than not that the introduction of these letters, had they been available at the time of trial, would have changed the outcome at trial, as the trial evidence was overwhelming that he did not live at the apartment at the time. (*see People v. Griffin* (2017) 2017 Cal. App Unpub. LEXIS 2424 [petitioner's opinion on appeal]; *see also People v. Ulloa* (2009) 180 Cal.App.4th 601 [entry constitutes burglary if defendant cosigned apartment lease as joint tenant but has moved out then enters with intent to commit theft or any felony]). Petitioner does not credibly establish that he was living in the apartment on July 21, 2015, and fails to state a prima facie case for relief, requiring the claim's denial. (*In re Bower* (1985) 38 Cal.3d 865).

Lodg. Doc. No. 8.

### B. Clearly Established Federal Law

The Supreme Court has explicitly noted that it is an open question whether a freestanding claim of actual innocence is cognizable on federal habeas review. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009) (whether federal constitutional right to be released upon proof of "actual innocence" exists "is an open question").

C. <u>Analysis</u>

Petitioner's claims based on actual innocence and new evidence fail. First, as noted in the preceding section, the Supreme Court has not recognized a freestanding claim of actual innocence on federal habeas review. Consequently, the California courts' rejection of this claim cannot be contrary to, or an unreasonable application of, clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized.").

Second, the evidence that petitioner points to as supportive of his innocence is not "new." Rather, it has already been put to and rejected by the jury in this case. For instance, the notarized recantation statement from the victim tracks a similar recantation she offered at trial. RT at 74-82.[5] Petitioner's reliance on the lease document or utility bills is also misplaced insofar as the victim testified at trial that petitioner's name was on those documents. *Id.* at 74. Lastly, with respect to the landlord's letter, the state court correctly noted that it does not attest to any personal knowledge that petitioner was still living in the apartment on the day of the incident. ECF No. 1 at 21. It simply states that the petitioner "was a resident of ours" between October 1, 2014 and December 8, 2015. *Id.* Thus, it was not unreasonable for the state court to conclude that its evidentiary value in demonstrating petitioner's innocence was minimal.

Based on the foregoing, these claims fail.

II. <u>Ineffective Assistance of Counsel and Denial of Right to Compulsory Process (Claim 3)</u>

Petitioner argues that his attorney rendered ineffective assistance and violated his right to compulsory process by failing to subpoena both his landlord and a special investigator.

/////

/////

---

[5] One notable difference between the notarized recantation and the victim's statements at trial is her new contention that she and petitioner were living together on the night of the incident. As respondent points out, this new statement directly conflicts with the victim's trial testimony, statements to police, and 911 calls. RT at 47; CT at 111, 118.

11

### A. Last Reasoned Decision

In its denial of petitioner's habeas petition, the superior court noted that petitioner had raised the argument that his trial counsel rendered ineffective assistance by failing to obtain testimony from the apartment landlord. Lodg. Doc. No. 8 at 1. The superior court did not, however, go on to analyze this claim in its decision. Additionally, it made no reference to the special investigator or to any potential violation of petitioner's compulsory process rights.

### B. Clearly Established Federal Law

#### 1. Ineffective Assistance

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id*. at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

#### 2. Compulsory Process

The Sixth Amendment guarantees a defendant compulsory process to obtain favorable witnesses. *Washington v. Texas*, 388 U.S. 14, 17-18 (1967). Habeas relief is not available merely because a petitioner's desired witnesses were not available; instead, he "at least make some plausible showing of how [the witness's] testimony would have been both material and favorable

/////

to his defense" and not "merely cumulative." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

C. <u>Analysis</u>

As a preliminary matter, no compulsory process claim can succeed where the defendant, rather than the government, is responsible for the defense witnesses' unavailability to testify. *See United States v. Collins*, 551 F.3d 914, 926-27 (9th Cir. 2009). Here, petitioner lays the blame for failing to secure his desired witnesses squarely at the feet of his own trial attorney. Consequently, his claim fails.

And with respect to his trial counsel's performance, the court concludes that he has failed to demonstrate that he was actually prejudiced by her failure to subpoena either his landlord or a special investigator. As noted *supra*, the statement submitted by petitioner's landlord failed to indicate any personal knowledge as to whether petitioner was still residing with the victim on the day of the incident. And with respect to the special investigator, petitioner has stated only that this individual could testify that the victim, on some unspecified date, had taken his key – presumably to the apartment. ECF No. 1 at 14. This is insufficient to show prejudice. It is entirely unclear how the fact that the victim took petitioner's key would undermine confidence in the guilty verdict. And, as respondent points out, this assertion as to what the special investigator would have testified to lacks any evidentiary support. *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (no prejudice where petitioner did "nothing more than speculate that, if interviewed, [a potential witness] might have given information helpful to [petitioner]"); *see also Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (no ineffective assistance for failure to call witnesses where, e.g., petitioner failed to provide evidence that such witnesses would testify).

For the foregoing reasons, these claims fail.

III. <u>Sufficiency of the Evidence (Claim Two)</u>

Petitioner argues that insufficient evidence supports his conviction because the victim testified that she did not suffer any injuries and the testifying law enforcement officers failed to prove any injury to the victim insofar as they did not present any photographs or medical records corroborating injury. ECF No. 1 at 5.

### A. Last Reasoned Decision

Petitioner raised this claim at the state level on both direct appeal and collateral review. On direct appeal the appellate court reasoned:

> Defendant suggests there is insufficient evidence to support his conviction for infliction of corporal injury because there were no pictures or medical records showing Greer suffered any injuries, Greer testified she did not suffer any injuries, and her sister did not observe any injuries. We disagree.
>
> When a defendant challenges the sufficiency of the evidence supporting a conviction, we review the entire record in the light most favorable to the judgment to determine whether it discloses sufficient evidence-- that is reasonable, credible, and of solid value--to support the decision. (*People v. Jennings* (2010) 50 Cal.4th 616, 638.) "We neither reweigh the evidence nor reevaluate the credibility of witnesses." (*Ibid*.)
>
> Penal Code section 273.5, subdivision (a) prohibits inflicting "corporal injury resulting in a traumatic condition" upon someone with whom the offender has, or previously had, a dating relationship. Subdivision (d) of Penal Code section 273.5 defines " 'traumatic condition'" as "a condition of the body, such as a wound, or external or internal injury . . . whether of a minor or serious nature, caused by a physical force." Here, there is ample evidence in the record to support defendant's conviction for infliction of corporal injury. The record reflects defendant broke down Greer's door and hit her in the face several times, causing swelling and redness. [**4**]
>
> [**FN 4**: We note that the same evidence is sufficient to support defendant's Burglary conviction and the occupied burglary enhancement. (Pen. Code, §§ 459, 460, 667.5, subd. (c)(21).)]

*People v. Griffin*, 2017 Cal. App. Unpub. LEXIS 2424, *9-10 (Cal. Ct. App. Apr. 7, 2017).

On state habeas review, the Superior Court recognized that petitioner had renewed this claim. It noted:

> Petitioner also claims that the evidence was insufficient to show the burglary because of lack of proof that he did not live at the apartment at the time of the incident.
>
> This is not a claim cognizable on habeas corpus in a California habeas petition, but instead may only be raised on appeal (*In re Lindley* (1947) 29 Cal. 2d 709).
>
> Regardless, the Third District already determined that the evidence showed that petitioner did not live in the apartment at the time of the incident, and this court would have no reason to determine otherwise even if the claim were cognizable on habeas corpus.

Lodg. Doc. No. 8.

14

Given that the habeas court failed to reach the substance of petitioner's claim after concluding that it could only be raised (and was) on direct appeal, the court concludes that the last reasoned decision belongs to the court of appeal on direct review.

### B. Clearly Established Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

If the record supports conflicting inferences, the reviewing court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120,

133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." *Coleman*, 566 U.S. at 655. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Under Jackson, the Court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the Anti-Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011)). *See also Coleman*, 566 U.S. at 651 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015) (same).

C. <u>Analysis</u>

The Court of Appeal's rejection of petitioner's claim was reasonable. The testimony of responding officers, the records of the victim's 911 calls, and the contemporaneous statements made by the victim to police all support petitioner's conviction. *See*, *e.g.*, RT at 106-08, 110-11; CT at 111-26. And although petitioner points to potential gaps in the evidence – for instance, lack of photographic evidence of the victim's injuries – he falls far short of demonstrating that no reasonable jury could have found him guilty based on the evidence that was presented.

This claim fails.

IV. False Evidence (Claim Four)

Finally, petitioner argues that the prosecution knowingly used perjured testimony to convict him. He argues that "[e]veryone knows" that police responding to reports of domestic violence are required to dispatch with cameras and take photographs. ECF No. 1 at 15. He claims that, at trial, one of the responding officers offered conflicting testimony as to whether he had a camera on the day of the incident. *Id.* More generally, he claims that the prosecutor knew that he had not committed burglary because, as noted above, his name was on the apartment lease. *Id.* Finally, he claims that the prosecutor made the false statement that petitioner had threated to kill the victim. *Id.*

A. Last Reasoned Decision

No state court appears to have actually considered this claim in a reasoned opinion. Nevertheless, the Court presumes that the claim was adjudicated on the merits. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Accordingly, the Court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then [the Court] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.

B. Clearly Established Federal Law

"The [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). The use of false evidence by the government requires a new trial, "if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 154 (1972).

/////

/////

C. <u>Analysis</u>

This claim fails for two reasons. First, he offers no evidence, other than his own unsupported assertions, that any of the testimony offered against him was false. The claim that "everybody knows" that police use cameras when responding to domestic violence complaints is insufficient to establish that they did so in this case. Moreover, to the extent any witness offered contradictory or conflicting statements on the stand (as petitioner alleges one of the officers did), the jury was able to consider those contradictions in reaching its verdict. Second, petitioner has failed to establish that the prosecutor knew any of the testimony presented to be false. *See United States v. Polizzi*, 801 F.2d 1543, 1549-50 (9th Cir. 1986). At best, he offers only his own, unsupported speculation that the prosecutor knowingly used false testimony. Mere speculation cannot carry his burden. *United States v. Aichele*, 941 F.2d 761, 766 (9th Cir. 1991).

<u>CONCLUSION</u>

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section

/////
/////
/////

2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 14, 2019.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE